IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-345-FL

| | |
|---|---|
| JEAN J. GELIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| N-ABLE TECHNOLOGIES, INC. f/k/a ) | |
| Solarwinds, MSP, a Delaware corporation, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court upon defendant's partial motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 7). The issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action against defendant, his former employer, on May 17, 2022, in Wake County Superior Court, and defendant filed a notice of removal in this court on August 30, 2022. In his complaint, plaintiff asserts claims for discrimination based on race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and for wrongful discharge in violation of public policy under North Carolina law. Plaintiff seeks damages, attorney's fees, and interest.

Defendant filed the instant motion to dismiss those parts of plaintiff's Title VII claims premised upon constructive discharge, as well as plaintiff's North Carolina wrongful discharge claim in its entirety. The court entered a case management order on November 1, 2022, which

provides a June 10, 2023, deadline for discovery, and an August 10, 2023, deadline for dispositive motions.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff is a "Black Haitian American male" who was hired by defendant on December 3, 2018, initially as a "Director, in [d]efendant's Operations Engineering department, at a base salary of $160,000.00." (Compl. (DE 1-1) ¶¶ 11, 18). On April 28, 2020, "during a reorganization" of the department in which he worked, plaintiff "was demoted to a role that lacked the benefits of his previous job title, and the team that worked under him was removed." (Id. ¶ 20). "Prior to this adverse employment action, [plaintiff] led the highest performing team within the Global DevOps division for [d]efendant, which led to members of his team being promoted, while [plaintiff] himself was demoted." (Id. ¶ 21).

"Shortly thereafter, [plaintiff] requested from [d]efendant that he be allowed to continue managing his technical team personnel, like he previously was, but [plaintiff] never received a response." (Id. ¶ 22). According to the complaint:

> A similarly situated, white co-worker made the same request as did [plaintiff], and the white co-worker received a response, and their request was granted. For example, Jay DeLeon, ["DeLeon"] a similarly situated (white American) colleague of [plaintiff], was hired as a project manager by [d]efendant, even though DeLeon lacked DevOps, Docker, and Kubemetes experience, all of which [plaintiff] had extensive experience with. Similarly, DeLeon requested the opportunity to manage a group of Technical Engineers and his request was approved, while [plaintiff's] same request was denied. Additionally, part of [plaintiff's] previous team that [plaintiff] led was moved to DeLeon's team for DeLeon to manage. [Plaintiff's supervisor] Vansteenbergen acknowledged the move and praised [plaintiff's] former team to the exclusion of [plaintiff], as though [plaintiff] never existed.

(Id. ¶ 23). Plaintiff "later reported to [d]efendant's Human Resources ('HR') . . . that he felt discriminated and reported several instances of unfair treatment." (Id. ¶ 24). "HR responded to [plaintiff] acknowledging receipt of his complaint and advising him that they would investigate

2

his claims." However, after plaintiff's complaint to HR, plaintiff allegedly "started being harassed in the following ways:"

> (a) [Plaintiff] was alienated by Vansteenbergen and other employees of Defendant in company-wide emails.
>
> (b) [Plaintiff] was not allowed the same opportunities as his colleagues in terms of training, coaching, and feedback.
>
> (c) [Plaintiff's] responsibilities were decreased without good cause.
>
> (d) [Plaintiff] was treated differently based on his race and national origin when he was denied a position based solely on his race and national origin; meanwhile, non-black and non-Haitian American coworkers were granted the position.
>
> [e] [Plaintiff] was subjected to other types of harassment and discrimination[.]

(Id. ¶¶ 25, 26). Plaintiff believed it to be in his best interest to raise his concerns with HR "because his supervisor was already aware of the adverse employment actions since he was partially responsible for the discrimination and harassment, . . . and did nothing to correct or remedy the issues." (Id. ¶ 27). "At some point after reporting the incidents relating to the hostile work environment, Vansteenbergen informally admitted to being tough on [plaintiff] and apologized, but continued discriminating against him." (Id. ¶ 28).

Allegedly "[a]s a result of this continued harassment, and the lack of remedy or corrective action being taken by [d]efendant, despite [allegedly knowing] the adverse employment action(s) and hostile work environment, [plaintiff] felt as though his only option was to either continue submitting to the discrimination and harassment or terminate his employment with [d]efendant." (Id. ¶ 29). "Therefore, on . . . June 15, 2021, [plaintiff] resigned from [d]efendant," allegedly "due to the duress of a hostile and unfair work environment that he was subjected to by [d]efendant." (Id.).

Plaintiff "did not himself want to leave his job [with defendant], because he had invested extensive time and energy into building the company, and expected to continue working with

3

[d]efendant until he could collect his retirement." (Id. ¶ 31). However, plaintiff allegedly "was subject to discriminatory and harassing behaviors from his co-workers, supervisors, and other employees/co-workers for [d]efendant." (Id. ¶ 32). "[W]hen [plaintiff] was submitting his resignation letter, he reasonably feared retaliation from [d]efendant if he were to explicitly state and name everyone who treated him unfair and for retaliation against his former co-workers who did nothing wrong except witness or work with [plaintiff] during the relevant time." (Id. ¶ 33).

## COURT'S DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[1]

B.  Analysis

1.  Title VII Claims Based on Constructive Discharge

Defendant argues that plaintiff fails to allege sufficient facts to support Title VII claims based upon constructive discharge.[2] The court agrees.

---

[1]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

[2]  Defendant does not move to dismiss any other part of plaintiff's Title VII claims, and the court leaves the viability of the remainder of plaintiff's Title VII claims for a later juncture.

4

To state a claim under Title VII based on constructive discharge, a plaintiff must allege the defendant employer "discriminate[d] against [him] to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Green v. Brennan, 578 U.S. 547, 555 (2016). "When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." Id.

"[C]onstructive discharge requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment," Perkins v. Int'l Paper Co., 936 F.3d 196, 212 (4th Cir. 2019), under which "the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Pennsylvania State Police v. Suders, 542 U.S. 129, 146–47 (2004). "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." Id. at 147.

"Critically, difficult or unpleasant working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign." Perkins, 936 F.3d at 212. For example, "being yelled at, told you are a poor manager, required to work with an injured back and chastised in front of customers is not so intolerable as to compel a reasonable person to resign." Id. Likewise "co-worker ostracism, denial of a management position and mandatory counseling for turning in an inaccurate time card" are not sufficient. Id. "[B]eing ignored by co-workers and top management," or "dissatisfaction with work assignments, perceived unfair criticism and difficult and unpleasant working conditions" are insufficient to establish constructive discharge. Id.

5

Drawing from the lesser hostile work environment standard, "rude treatment from coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable." Evans v. Int'l Paper Co., 936 F.3d 183, 192. (4th Cir. 2019). "The more continuous the conduct, the more likely it will establish the required intolerability; [o]n the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." Id. Finally, there must be facts supporting an inference that the alleged harassment or intolerable conditions are based on race or other protected status. See Id.

Here, plaintiff fails to allege facts meeting the standard for constructive discharge. He alleges no statements made by supervisors in the form of epithets based on race or national origin, much less continuous or "severe or pervasive" verbal harassment or threats. Id. (citing the example of Amirmokri v. Baltimore Gas & Electric Co., 60 F.3d 1126, 1132 (4th Cir. 1995), in which "subjecting the plaintiff to almost daily epithets about his Iranian descent and attempting to embarrass him in public created a genuine issue of material fact about intolerability"). The alleged actions taken against plaintiff and conduct towards him fall well short of the high bar that exceeds the standard of a hostile work environment.

For example, the allegations that plaintiff was demoted "during a reorganization" while members of his team were promoted, or that he did not receive a response from management to a request, or that management "praised [plaintiff's] former team to the exclusion of [plaintiff], as though [plaintiff] never existed," (compl. ¶¶ 20-23), are insufficient to give rise to an inference of severe and pervasive working conditions. Rather, these "difficult or unpleasant working conditions" are, at most, akin to "being yelled at and told you are a poor manager," or "being ignored by co-workers and top management," or "chastised in front of customers," all recognized

6

Case 5:22-cv-00345-FL   Document 17   Filed 04/25/23   Page 6 of 10

as not meeting the high "severity or pervasiveness of harassment" for constructive discharge. Evans, 936 F.3d at 193; Perkins, 936 F.3d at 212.

Falling in the same category are allegations that plaintiff was not included in company-wide emails, "not allowed the same opportunities as his colleagues in terms of training, coaching, and feedback," and had "responsibilities . . . decreased without good cause." (Compl. ¶ 25). Likewise, plaintiff's allegations that a similarly situated white colleague was hired as a project manager, with less experience from plaintiff, is not sufficient to give rise to an inference of "continuous" or "severe or pervasive" harassment based on race or nationality. Evans, 936 F.3d at 192. Remaining assertions of "harassment" or "discriminatory" behavior in the complaint, (e.g., compl. ¶¶ 29, 32), are insufficient to salvage plaintiff's claim, as they are mere conclusory assertions devoid of factual enhancement. Nemet Chevrolet, 591 F.3d at 255.

Plaintiff argues that he has alleged sufficient facts to support a constructive discharge claim because defendant made plaintiff's position "obsolete and shell of what it once was," with plaintiff "merely getting paid wages without . . . any inherent purpose or meaning." (Pl's Resp. (DE 10) at 6). However, the standard for a constructive discharge claim is far from guaranteeing a plaintiff a job with "inherent purpose or meaning" or a job that is not "obsolete" or a shell of its former self. "[D]issatisfaction with work assignments" and "difficult and unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Perkins, 936 F.3d at 212.

Plaintiff cites to Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994), for the proposition that "[d]emotion can constitute a constructive discharge, especially where the demotion is essentially a career-ending action or harbinger of dismissal." (Pl's Resp. at 13). This argument is unavailing under the circumstances of this case for two reasons. First, the court in Carter did not hold that a demotion in that case was a constructive discharge, and it is not clear under what circumstances a

7

demotion, without more, could meet the standard of an "intolerable" working condition. Green, 578 U.S. at 555. Second, in any event, plaintiff has not alleged facts giving rise to a plausible inference that his demotion was "essentially a career-ending action or harbinger of dismissal," Carter, 33 F.3d at 459, particularly where he is not alleged to have received a reduction in salary.

In sum, those parts of plaintiff's Title VII claims based upon a theory of constructive discharge fail as a matter of law and are dismissed.

2. North Carolina Claim

Defendant argues that plaintiff's claim for wrongful discharge under North Carolina law fails because North Carolina law does not recognize a claim for constructive discharge or retaliation, as asserted in the complaint. The court agrees.

In his claim for wrongful discharge under North Carolina law, plaintiff contends that he was "constructively terminated" contrary to public policy based on race or national origin, in violation of N.C. Gen. Stat. § 143-422.2 (Compl. ¶¶ 55, 59). Plaintiff also suggests he was retaliated against for making complaints of discrimination. (See Compl. ¶¶ 25, 33). The statute provides, in pertinent part, that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap." N.C. Gen. Stat. § 143-422.2(a).

Plaintiff's claim fails as a matter of law, however, because the North Carolina Supreme Court has not recognized a claim for constructive discharge or retaliation under N.C. Gen. Stat. § 143-422.2. "North Carolina courts and federal courts applying North Carolina law have . . . repeatedly [found] that no private cause of action exists for retaliation, hostile work environment, disparate treatment, or constructive discharge in violation of public policy." Jones v. Duke Energy

Corp., 43 F. App'x 599, 600 (4th Cir. 2002); see, e.g., Creech v. City of Wilson, N. Carolina, No. 5:19-CV-70-FL, 2019 WL 3720744, at *2 (E.D.N.C. Aug. 7, 2019). For example, in Whitt v. Harris Teeter, Inc., the North Carolina Supreme Court held that, "[f]or the reasons stated in the dissenting opinion, the decision of the Court of Appeals is reversed." 359 N.C. 625, 625 (2005) (per curiam). Thus, the North Carolina Supreme Court refused to recognize a claim for "constructive discharge based upon either a hostile work environment or in retaliation" under the public policy exception to at-will employment doctrine under North Carolina law. See Whitt v. Harris Teeter, Inc., 165 N.C. App. 32, 43–45 (2004) (McCullough, J., dissenting).

Plaintiff's reliance on the opinion of the North Carolina Court of Appeals in Whitt as authority for a claim of "constructive" termination, (Pl's Resp. at 7), accordingly misses the mark.[3] Similarly, plaintiff's citation to Jackson v. Blue Dolphin Commc'ns of N. Carolina, L.L.C., 226 F. Supp. 2d 785 (W.D.N.C. 2002), is unavailing, where the plaintiff in that case alleged "she was terminated for refusing to sign a false affidavit to be used in a future court proceeding." Id. at 793. Plaintiff here does not allege he was terminated for refusing to commit perjury in a court proceeding. Moreover, Jackson does not address a claim of constructive discharge, as plaintiff asserts here. Accordingly, Jackson is inapposite.

In sum, plaintiff fails to state a claim upon which relief can be granted under North Carolina law. Therefore, plaintiff's claim for wrongful discharge in violation of public policy must be dismissed.

---

[3] Plaintiff's alternative suggestion in response that he should be permitted leave to amend his complaint to "allege discrimination and harassment in violation of North Carolina's public policy" is without merit, because an amendment to add such a claim would be futile in light of the North Carolina Supreme Court's decision in Whitt, 359 N.C. at 365.

# CONCLUSION

Based on the foregoing, defendant's partial motion to dismiss (DE 7) is GRANTED. The court DISMISSES those parts of plaintiff's Title VII claims (counts I and II in the complaint) based upon a theory of constructive discharge, as well plaintiff's claim under North Carolina law (count III). For those remaining parts of plaintiff's Title VII claims, defendant must serve a responsive pleading within 14 days of entry of this order.

SO ORDERED, this the 25th day of April, 2023.

                                                    LOUISE W. FLANAGAN
                                                    United States District Judge